IN RE: ANNEXATION ORDINANCE ADOPTED BY THE CITY OF ALBEMARLE, ORDINANCE NO. 78-7, TO EXTEND THE CORPORATE LIMITS OF THE CITY OF ALBEMARLE, NORTH CAROLINA UNDER THE AUTHORITY GRANTED BY PART 3, ARTICLE 4A, CHAPTER 160A OF THE GENERAL STATUTES OF NORTH CAROLINA

No. 111

(Filed 3 June 1980)

1. **Municipal Corporations § 2— annexation ordinance—city over 5,000—appeal to Supreme Court**

    Appeal of an annexation ordinance of a city of 5,000 or more people should have gone initially to the Supreme Court pursuant to G.S. 160A-50(h).

2. **Municipal Corporations § 2.2— annexation—outlying urban areas—intervening undeveloped lands**

    Cities with 5,000 or more people may annex an outlying urban area pursuant to G.S. 160A-48(c) and the intervening undeveloped lands pursuant to G.S. 160A-48(d) so long as the entire area meets the contiguity requirements of G.S. 160A-48(b)(1) and (2) and is not already included within the boundary of any other incorporated municipality, G.S. 160A-48(b)(3). However, the urban area that a city seeks to qualify for annexation under one of the urban purposes tests set forth in G.S. 160A-48(c)(1)-(3) must be considered as a whole, *i.e.*, as one area, and may not be divided into subareas or study areas.

3. **Municipal Corporations § 2.1— annexation—public hearing—explanation of annexation report—reading of entire report**

    A city complied with the requirement of G.S. 160A-49(d) that a public hearing be held at which "a representative of the municipality shall first make an explanation of" the annexation report where an officer of the municipality read the entire report of the proposed annexation, since the reading of the report in its entirety was a more detailed explanation of the report than a shorter summary explanation prepared by a representative of the municipality would have been.

4. **Municipal Corporations § 2.6— annexation—plans for extension of services**

    A city complied with the requirements of G.S. 160A-47(3) pertaining to the extension of municipal services to an area to be annexed where (1) the annexation report indicates that the city will hire six additional firemen, will let a contract within 12 months for construction of a fire station in the area, will acquire the necessary fire-fighting apparatus for the station, and in the interim period will either contract with a volunteer fire department to serve the area or will establish a temporary fire station in the area with the necessary men and equipment; (2) the report states that garbage is collected in the city twice a week, that collection in the newly annexed area will be on substantially the same basis as in the rest of the city, and that the city will purchase one new garbage truck and will employ additional personnel to provide collection on substantially the same basis and in the same manner as the rest of the city; (3) the report makes adequate provision for uniform street maintenance in the

city and the newly annexed area; and (4) the report states that the city will extend water and sewer lines into the area where such lines do not presently exist, contains exhibits showing the location of these lines, and states that contracts for the construction of these lines will be let not more than 12 months after the effective date of the annexation ordinance.

Justice BROCK did not participate in the decision of this case.

ON petition for discretionary review pursuant to G.S. 7A-31 from the opinion of the Court of Appeals, 44 N.C. App. 274, 261 S.E. 2d 39 (1979) (opinion by *Martin [Robert M.], J.* with *Parker, J.* and *Chief Judge Morris* concurring), which affirmed the judgment of *Walker (Ralph), S. J.* entered 27 October 1978 in STANLY County Superior Court in which he affirmed the annexation ordinance that the City Council of Albemarle adopted on 8 May 1978.

Petitioners own land in the area to be annexed. On 26 May 1978, they petitioned for review of the annexation ordinance on the grounds that the respondent failed to meet the requirements of G.S. 160A-47(3), 160A-48, and 160A-49(d) and that petitioners would suffer material injury as a result of these failures to comply with the statutory requirements regarding the annexation of an area by a city.

Petitioners lost in the trial court and in the Court of Appeals. We allowed discretionary review on 5 March 1980.

*Edwin H. Ferguson, Jr. for petitioner-appellants.*

*Henry C. Doby, Jr. for respondent-appellee.*

COPELAND, Justice.

[1]   We allowed discretionary review in this case because it was improper for the appeal to go initially to the Court of Appeals. Albemarle is a city of 5,000 or more people and pursuant to G.S. 160A-50(h) appeal lies directly to this Court. *Humphries v. City of Jacksonville*, 300 N.C. 186, 265 S.E. 2d 189 (1980).

Originally, appeals in cases involving cities of less than 5,000 people, G.S. 160-453.6(h) and (i) (1964) (now G.S. 160A-38(h) ), and appeals in cases involving cities of 5,000 or more people, G.S. 160-453.18(h) and (i) (1964) (now G.S. 160A-50(h) ), came directly to

this Court since the Court of Appeals was not then in existence. After creation of the Court of Appeals (effective 1 January 1967), this Court decided the case of *Adams-Millis Corp. v. Town of Kernersville*, 281 N.C. 147, 187 S.E. 2d 704 (1972).

The case involved a city with less than 5,000 people; therefore, the appeal was pursuant to G.S. 160-453.6(h) and (i). The appeal was taken to the Court of Appeals but this Court elected pursuant to G.S. 7A-31 to certify the appeal for initial appellate review by the Supreme Court. Nevertheless, this Court held that the appeal had been properly taken to the Court of Appeals. Justice (later Chief Justice) Sharp writing for the Court held that:

> "When the Court of Appeals was created as of 1 January 1967, the appellate division of the General Court of Justice became the Supreme Court and the Court of Appeals. G.S. 7A-5, G.S. 7A-16; *State v. Colson*, 274 N.C. 295, 163 S.E. 2d 376. *By a clear legislative oversight Sections (h) and (i) of G.S. 160-453.6 were not amended to include the Court of Appeals as one of the appellate courts*. However, N.C. Sess. Laws, Ch. 108, Section 1 (1967), codified as G.S. 7A-25 to -35, defines the respective appellate jurisdiction of the Supreme Court and the Court of Appeals. *By G.S. 7A-27 initial appellate jurisdiction of this cause is given to the Court of Appeals subject, however, to the provisions of G.S. 7A-31. The Court of Appeals, therefore, is now deemed to be included in Sections (h) and (i) of G.S. 160-453.6. Guilford County v. Estates Administration, Inc.*, 212 N.C. 653, 194 S.E. 295. This appeal was properly taken to the Court of Appeals, from which it was transferred to this Court upon our order entered under G.S. 7A-31." *Adams-Millis Corp. v. Town of Kernersville, supra* at 149, 187 S.E. 2d at 705. [Emphasis added.]

Subsequently, in 1977, the statute dealing with appeals in annexation cases involving cities with less than 5,000 people was amended by the legislature to provide that the appeal is to go initially to the Court of Appeals. G.S. 160A-38(h) (Supp. 1979).

However, the statute dealing with appeals in annexation cases involving cities with 5,000 or more people *still* provides that the appeal is directly to this Court. G.S. 160A-50(h). Since the legislature amended G.S. 160A-38(h) to provide that those appeals

are to go to the Court of Appeals, we cannot say that its failure to amend G.S. 160A-50(h) is a "clear legislative oversight" as was the case in *Adams-Millis*. Where an Article (Article 4A of Chapter 160A) has two distinct sections (160A-38(h) and 50(h) ) dealing with related matters, an amendment to one section is not an amendment to the other because it is presumed that if the legislature had intended the amendment to apply to both sections, it would have expressed such intent. *See, Arrington v. Stone & Webster Engineering Corp.*, 264 N.C. 38, 140 S.E. 2d 759 (1965) (dealing with two subsections within one statute); *see also, Andrews v. Nu-Woods, Inc.*, 299 N.C. 723, 264 S.E. 2d 99 (1980) (legislature clearly expressed its intent in G.S. 97-29 to amend G.S. 97-38). The result is that G.S. 160A-38(h) provides for appeal to the Court of Appeals in cases involving less than 5,000 people and G.S. 160A-50(h), pursuant to which the appeal was taken in this case, provides for appeal to the Supreme Court in cases involving 5,000 or more people. Therefore, this case should have come directly to this Court. *See, In re Annexation Ordinance [Goldsboro]*, 296 N.C. 1, 249 S.E. 2d 698 (1978) (direct appeal to this Court pursuant to G.S. 160A-50(h) decided without this issue being raised).

[2] The first issue is whether the area to be annexed meets the statutory requirements of G.S. 160A-48(b), (c) and (d).

G.S. 160A-48(a)(1) requires that the area to be annexed meet the general standards of subsection (b). Subsection (b) then requires that the *total* area to be annexed meet certain contiguity requirements, G.S. 160A-48(b)(1) and (2), and that the area not already be included within the boundary of any other incorporated municipality, G.S. 160A-48(b)(3).

G.S. 160A-48(a)(2) then requires that *"[e]very part . . .* [of the area to be annexed must meet] the requirements of *either subsection (c) or subsection (d)."* [Emphasis added.] Subsection (c) states that *"[p]art or all* of the area to be annexed must be developed for urban purposes," [emphasis added] and three tests for urban purposes are set forth in (c) (1)-(3). Part or all of the area to be annexed must meet the requirements of at least one of those three tests.

Subsection (d) provides:

"(d) *In addition to areas developed for urban purposes, a governing board may include in the area to be annexed any*

*area which does not meet the requirements of subsection (c) if such area* either:

(1) *Lies between the municipal boundary and an area developed for urban purposes so that the area developed for urban purposes is either not adjacent to the municipal boundary or cannot be served by the municipality without extending services and/or water and/or sewer lines through such sparsely developed area;* or

(2) Is adjacent, on at least sixty percent (60%) of its external boundary, to any combination of the municipal boundary and the boundary of an area or areas developed for urban purposes as defined in subsection (c).

The purpose of this subsection is to permit municipal governing boards to extend corporate limits to include all nearby areas developed for urban purposes *and where necessary to include areas which at the time of annexation are not yet developed for urban purposes but which constitute necessary land connections between the municipality and areas developed for urban purposes* or between two or more areas developed for urban purposes." [Emphasis added.]

Respondent followed precisely the requirements as set forth above. Cities with 5,000 or more people may annex an outlying urban area pursuant to G.S. 160A-48(c) and the intervening undeveloped lands pursuant to G.S. 160A-48(d) so long as the entire area meets the requirements of G.S. 160A-48(b).

Nothing contained in this opinion is inconsistent with this court's decision in *In re Annexation Ordinance [Charlotte]*, 284 N.C. 442, 202 S.E. 2d 143 (1974). In that case, the City of Charlotte did not attempt to utilize G.S. 160A-48(d) in its efforts to annex certain areas to the city. Instead, it sought to accomplish the annexation solely pursuant to G.S. 160-453.16(c)(1) (now G.S. 160A-48(c)(1) ). The city divided the area to be annexed into study areas and applied the urban purpose test of (c)(1) to each study area individually rather than to the area to be annexed as a whole. This was found to be contrary to the legislature's intent as set forth in (c)(1).

Thus, combining the holding in this case involving subsections (c) and (d) with the holding in *In re Annexation Ordinance [Charlotte], supra* involving subsection (c) the following principles emerge. The urban area that a city seeks to qualify for annexation under one of the urban purposes tests set forth in G.S. 160A-48(c)(1) - (3) must be considered as a whole; i.e., as one area and may not be divided into sub-areas or study areas. This requirement, however, does not preclude annexation of intervening undeveloped land pursuant to G.S. 160A-48(d). Finally, the entire area to be annexed must meet the requirements of G.S. 160A-48(b).

An annexation in accordance with the above standards is entirely in keeping with the declaration of policy as set forth in G.S. 160A-45(4) which notes that urban development in and around cities involving 5,000 or more people is more scattered than in smaller cities thus making it more difficult to annex and expand services into those areas. Such circumstances are to be taken into account when a city of 5,000 or more people attempts to annex an area and expand services into that area. G.S. 160A-48(c) and (d) set the standards which allow annexations to occur and services to be expanded into the developed areas in such situations.

The same is not true for cities of less than 5,000 people. They do not have a provision comparable to G.S. 160A-48(d). *See* G.S. 160A-36 and our decision in *Hawks v. Town of Valdese*, 299 N.C. 1, 261 S.E. 2d 90 (1980).

[3] The second issue is whether the city failed to comply with the requirement of G.S. 160A-49(d) that a public hearing be held at which,

"a representative of the municipality shall first make an explanation of the report required in G.S. 160A-47. Following such explanation, all persons resident or owning property in the territory described in the notice of public hearing, and all residents of the municipality, shall be given an opportunity to be heard." G.S. 160A-49(d).

At the public hearing, an officer of the municipality read the entire report of the proposed annexation prepared pursuant to G.S. 160A-47. He offered no further explanation other than the reading of the report after which all persons were heard who

wished to be heard. Reading the report in its entirety was a more detailed explanation of the report than a shorter summary explanation prepared by a representative of the municipality would have been. In this manner, those who attended the meeting were made aware of each and every provision and statement in the report and were then given an opportunity to be heard. This is sufficient compliance with the requirements of G.S. 160A-49(d).

[4]   The third issue is whether the city complied with the requirements of G.S. 160A-47(3) which pertains to the extension of municipal services to the area to be annexed and the timetable for doing so.

Petitioners complain that adequate provision has not been made to extend fire protection to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within the municipality prior to annexation. However, the report indicates that the city will hire six additional firemen and within twelve months will let a contract for construction of a new fire station in the area to be annexed and will acquire the necessary fire-fighting apparatus for the station. In the interim period, the city will either contract with the Bethany Volunteer Fire Department (which now serves the area to be annexed) to serve this area or will establish a temporary fire station in the area with the necessary men and equipment.

Petitioner makes the same claim with respect to the extension of garbage collection to the area to be annexed because no schedule of trash collection is set out in the report and it does not state how many additional personnel will be hired to perform the task. The report states that garbage is collected in the city twice a week and collection in the newly annexed area will be on substantially the same basis and in the same manner as in the rest of the city. The report further states that the city will purchase one new garbage truck and will employ additional personnel to provide collection on substantially the same basis and in the same manner as in the rest of the city.

Petitioners voice the same complaint with respect to provisions for street maintenance in the area to be annexed. The report makes adequate provision for uniform maintenance in the city and the newly annexed area.

Lastly, petitioners complain that the provisions for extending water and sewer lines into the area to be annexed are not adequate to place this area on substantially equal terms with the rest of the city. The report reveals that the contrary is true. The city will extend water and sewer lines into this area "where such do not [presently] exist" and various exhibits detail the location of these lines. Contracts for the construction of these lines will be let not more than twelve months after the effective date of the ordinance. This is sufficient compliance with G.S. 160A-47(3(c). We held *In re Annexation Ordinance [Goldsboro], supra,* that it would appear from a reading of G.S. 160A-49(h) that a city annexing territory has one year and possibly fifteen months to implement its plans for extending services to an annexed area. Also, there is no requirement that the city duplicate services that are already available in the annexed area. *Id.*

We hold that the report and plans are sufficient upon all grounds upon which they have been challenged.

Since the Court of Appeals was without jurisdiction to hear and determine this appeal, its decision is vacated. The decision of the trial judge is affirmed.

Court of Appeals' decision is

Vacated.

Judgement entered by the trial judge is

Affirmed.

Justice BROCK did not participate in this decision.