IN RE: ANNEXATION ORDINANCE NO. 300-X; CHARLES J. WHITTLE AND
WIFE, ANN WRIGHT WHITTLE, PETITIONERS

No. 18

(Filed 1 December 1981)

**Municipal Corporations § 2.1— annexation plan—compliance with statute**

A city annexation plan met the requirements of G.S. 160A-47(3) where it contained (1) information on the level of services available in the city, (2) a commitment by the city to provide the same level of services in the annexed area within the statutory period, and (3) the method by which the city will finance the extension of the services. The additional personnel and equipment needed to extend services need not be estimated in order to determine whether the city has provided the services it promised.

APPEAL by petitioners pursuant to G.S. 160A-50(h) from judgment of *Johnson, J.,* presiding at 12 December 1980 non-jury mixed term MECKLENBURG Superior Court. Judgment was entered 22 December 1980.

On 14 January 1980 the Charlotte City Council adopted a resolution embodying its intent to annex the subject area, and on 25 February 1980 it adopted a report containing plans for serving the annexation area. A public hearing was held after proper notice, and the Council thereafter amended the report by reducing the size of the annexation area. On 24 March the City Council adopted the annexation ordinance setting the effective date to be 30 June 1980. Petitioners sought judicial review, and on 5 August 1980 a consent order remanded the ordinance to the City Council "for amendment of the boundaries of said Area to conform to the provisions of G.S. 160A-48(c)(1), it being found by the Court . . . that there are not two (2) persons per acre within the present boundaries of said Area." The conforming resolution was duly adopted by the City Council on 11 August 1980. Petitioners, who own land in the annexation area filed a new petition for full review on the ground that the Charlotte City Council failed to comply with the provisions of G.S. 160A-45 through G.S. 160A-55, alleging that petitioners would suffer material injury by reason of the Council's failure to comply with those statutes. After receiving evidence and hearing the arguments of counsel, the trial judge found facts, made conclusions of law, and thereupon affirmed Annexation Ordinance 300-X as amended. Petitioners gave

notice of appeal and applied for stay of the ordinance pending decision of the appeal. The stay was granted.

*Jeffrey L. Bishop and Hugh G. Casey, Jr., for petitioner appellants.*

*Henry W. Underhill, Jr., and H. Michael Boyd for respondent appellee.*

BRANCH, Chief Justice.

Petitioners first argue that the City's annexation plan fails to meet the requirements of G.S. 160A-47(3) in that it lacks sufficient detail and specificity.

G.S. 160A-47(3) requires a municipality's annexation report to contain:

(3) A statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation. Specifically, such plans shall:

a. Provide for extending police protection, fire protection, garbage collection and street maintenance services to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation. If a water distribution system is not available in the area to be annexed, the plans must call for reasonably effective fire protection services until such time as waterlines are made available in such area under existing municipal policies for the extension of waterlines.

b. Provide for extension of major trunk water mains and sewer outfall lines into the area to be annexed so that when such lines are constructed, property owners in the area to be annexed will be able to secure public water and sewer service, according to the policies in effect in such municipality for extending water and sewer lines to individual lots or subdivisions.

c. If extension of major trunk water mains and sewer outfall lines into the area to be annexed is necessary, set

> forth a proposed timetable for construction of such mains and outfalls as soon as possible following the effective date of annexation. In any event, the plans shall call for contracts to be let and construction to begin within 12 months following the effective date of annexation.
>
> d. Set forth the method under which the municipality plans to finance extension of services into the area to be annexed.

The burden is on petitioner to establish by competent and substantial evidence the City's noncompliance with G.S. 160A-47(3).

> As a general rule it is presumed that a public official in the performance of his official duties "acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest. [Citation omitted.] The presumption of regularity of official acts is rebuttable by affirmative evidence of irregularity or failure to perform duty, but the burden of producing such evidence rests on him who asserts unlawful or irregular conduct. The presumption, however, prevails until it is overcome by . . . evidence to the contrary. . . . Every reasonable intendment will be made in support of the presumption. . . ." *Huntley v. Potter*, 255 N.C. 619, 122 S.E. 2d 681 (1961); *accord, Styers v. Phillips*, 277 N.C. 460, 178 S.E. 2d 583 (1971). Hence the burden is on the petitioner to overcome the presumption by competent and substantial evidence. 6 N.C. Index 2d, Public Officers, § 8 (1968).

*In re Annexation Ordinance*, 284 N.C. 442, 452, 202 S.E. 2d 143, 149 (1974). *See also In re Annexation Ordinance*, 296 N.C. 1, 10-11, 249 S.E. 2d 698, 703-704 (1978); *In re Annexation Ordinance*, 255 N.C. 633, 642, 122 S.E. 2d 690, 697 (1961).

The City's written report contains plans for providing the major municipal services enumerated in G.S. 160A-47(3), the first of which we quote in full:

POLICE PROTECTION

The City of Charlotte has a well-trained, efficient Police Department whose function is the protection of life and property. Police protection is provided on a continuous 24 hour a day basis and is ready for immediate response to calls for protection service. The department performs a variety of services ranging from traffic control to crime investigation and uses the most modern police equipment available.

Many police services and divisions such as: central services, crime prevention, record-keeping, youth section, vice section and helicopter service are already being executed throughout the annexation area under the City-County consolidation of services program. Additional personnel and equipment required to provide police protection to this area will be secured prior to the effective date of annexation. Service will commence on the effective date.

In order to provide police protection on substantially the same basis and in the same manner as provided in the City, approximately $113,900 of general revenues will be appropriated in the annual budget to reflect the additional cost of services to this area. They do not anticipate any new capital improvements as a result of this annexation. The degree of service and the number of new officers and the amount of equipment needed to provide adequate protection is based on the adjacent areas currently inside the city limits.

The remaining provisions for major municipal services may be summarized as follows:

(a) Fire protection will be provided by constructing a two-bay fire station in the general vicinity of Carmel Road and Highway 51. This site will replace the previously determined temporary site. The costs of constructing and outfitting this station have been previously budgeted. During construction, fire protection will be provided from existing Station 16 at 6623 Park Road.

(b) Street maintenance services will be provided according to current policies in effect within the City which require maintenance of all streets constructed in accordance with City standards. In addition, streets currently maintained by the State

will be maintained by the City, except for those streets which form a part of the permanent State highway system. The additional personnel and equipment required to provide these services are to be obtained prior to the date of annexation so that services can commence immediately upon annexation. Approximately $116,600 of General Revenues will be appropriated in the budget to reflect these increased costs.

(c) Garbage collection or sanitation services will be provided in the form of garbage and trash collection, street cleaning, and seasonal leaf collection. Additional personnel and equipment needed to provide the services are to be secured prior to the effective date of annexation so that services can commence immediately upon annexation. Approximately $216,300 of General Revenues will be appropriated in the budget to reflect these increased costs.

(d) The basic water and sewer system in the Area will be provided by extensions of the City's water and sewer systems in accordance with the City's Water/Sewer Extension Policy as adopted on 19 May 1975. These extensions will be under contract and construction within one year following the effective date of annexation, if not earlier. The cost of the basic sewer trunk system is estimated to be $525,000. The cost of the basic water system is estimated to be $622,000. The City plans to finance construction of the systems by sale of municipal bonds and to operate the systems on revenues generated by sale of the services to municipal residents.

We have examined these plans and find them remarkably similar to others approved by this Court. We approved, for example, the following plan for extension of police protection contained in an annexation report filed by the City of Jacksonville:

> *Police Protection.* The Jacksonville Police Department has jurisdiction for one mile beyond the present City Limits and presently provides protection for residential areas within the City Limits on a regular patrol basis. The patrol coverage enables the department to respond to calls for aid in an average time of 5.5 minutes.
>
> If annexed into the City, the routine patrol through the Northwoods Area will be extended into the Forest Hills Area

providing coverage to the new area on substantially the same basis as presently provided in the existing City.

The minor additional expense in lengthening the present patrol route will be provided for in subsequent fiscal year budgets following annexation.

*In re Annexation Ordinance*, 255 N.C. 633, 635, 122 S.E. 2d 690, 692-93 (1961). We held this plan for extension of services to be in "full and substantial compliance with the Act." *Id.* at 647, 122 S.E. 2d at 701. We see no fundamental difference between these two plans. The Charlotte plan does lack the average response time and the name of the patrol route that would be involved in extending the services. On the other hand, the plan assures 24 hour service and immediate response to calls. We believe that this plan is sufficiently detailed to satisfy the requirements of G.S. 160A-47(3), particularly in light of the additional detail provided on the scope of services available through the Charlotte Police Department.

Petitioners strongly contend that any plan is deficient unless it specifies the number of additional personnel and the amount of additional equipment which will be required to extend services to the annexed area. We disagree. The central purpose behind our annexation procedure is to assure that, in return for the added financial burden of municipal taxation, the residents receive the benefits of all the major services available to municipal residents. *See* 2 E. McQuillan, *The Law of Municipal Corporation*, § 7.46 (3d ed., 1979 rev.). *See also Moody v. Town of Carrboro*, 301 N.C. 318, 271 S.E. 2d 265 (1980). The minimum requirements of the statute are that the City provide information which is necessary to allow the public and the courts to determine whether the municipality has committed itself to provide a nondiscriminatory level of service and to allow a reviewing court to determine after the fact whether the municipality has timely provided such services. If such services are not provided, the residents of the annexed area would be entitled to a Writ of Mandamus requiring the municipality to live up to its commitments. G.S. 160A-49(h); *Safrit v. Costlow*, 270 N.C. 680, 155 S.E. 2d 252 (1967).

The satisfaction of this purpose does not require the degree of specificity petitioners demand. The additional personnel and equipment needed to extend services need not be estimated in

order to determine whether the City has provided the services it promised. *See In re Annexation Ordinance*, 300 N.C. 337, 266 S.E. 2d 661 (1980) (plan approved in which garbage collection portion of report failed to specify how many additional personnel would be hired to serve annexed area and fire protection portion of report stated only that the city would "acquire the necessary fire-fighting apparatus" to protect the annexed area). We believe that the report need contain only the following: (1) information on the level of services then available in the City, (2) a commitment by the City to provide this same level of services in the annexed area within the statutory period, and (3) the method by which the City will finance the extension of these services. *See Moody v. Town of Carrboro*, 301 N.C. 318, 271 S.E. 2d 265 (1980). With this minimal information, both the City Council and the public can make an informed decision of the costs and benefits of the proposed annexation, a reviewing court can determine whether the City has committed itself to a nondiscriminating level of services, and the residents and the courts have a benchmark against which to measure the level of services which the residents receive within the statutory period.

An attack on the specificity of a municipality's plan with respect to providing major municipal services to an annexation area was considered by this Court in the recent case of *Moody v. Town of Carrboro, supra*. Rejecting petitioners' contention that the plan was not sufficiently specific as to police and garbage collections, this Court speaking through Huskins, J., stated:

> Petitioner also contends the plan is insufficient with respect to extension of street maintenance service as required by G.S. 160A-47(3)a. The plan details what services are provided in the Town and states that all such services will be provided in the annexed area. Providing a nondiscriminating level of services within the statutory time is all that is required.

301 N.C. at 328, 271 S.E. 2d at 271-72.

So it is here. The municipality has shown *prima facie* complete and substantial compliance with the provisions of G.S. 160A-47(3), and petitioners have failed to carry their burden of showing by competent evidence failure on the part of the municipality to comply with statutory requirements. Our conclu-

sion is strongly buttressed by the marked similarity between the reports of plans to extend services approved in *In re Annexation Ordinance*, 255 N.C. 633, 122 S.E. 2d 690 (1961), and the plans under attack in instant case.

With regard to financing the improvements, we see no problem with the general statement by the City that services with the exception of water and sewer services would be paid for out of general revenues. G.S. 160A-47(3)(d) requires only that the *method* of financing be disclosed, not that the precise source of each dollar be pinpointed. By its statement, the City has disclosed that the method used to finance these services will be by budgeting funds for the services out of the City's general revenues. Had the City intended to finance services by issuance of municipal bonds, by grant, or by assessment, disclosure of this too would have been required under the statute. The City plans to finance the extension of water and sewer service by an issuance of bonds and to finance the continued operation of the service by revenues derived from sale of the service to users. Again, this statement adequately discloses the intended method of financing the services and must be approved.

This assignment of error is overruled.

Petitioners' second assignment of error relates to the City's plan to extend fire protection to the annexed area. The plan above summarized provides for the building of a new fire station in the annexed area and service from an existing station nearby until the new station is completed. Petitioners argue that the temporary service from the existing station would not provide fire protection on substantially the same basis and in the same manner as provided elsewhere in the City. In this connection, we note that the City has no obligation to provide any fire protection until the effective date of annexation, which was stayed at petitioners' request pending this appeal. The effective date of the annexation will not occur until the final judgment of this Court is certified to the Clerk of Superior Court of Mecklenburg County. *Moody v. Town of Carrboro*, 301 N.C. at 330, 271 S.E. 2d at 272-73. Meanwhile, it was admitted at oral argument that during the pendency of this appeal the new fire station proposed in the City's plan has already been completed and is fully operational. The question of whether the proposed interim service would have

been adequate is rendered moot by the completion of the new fire station.

We, therefore, need not further consider petitioners' second assignment of error.

The judgment of the Superior Court affirming the annexation order is

Affirmed.