IN RE: ANNEXATION ORDINANCE 301-X; FREDERICK WILSON RANDALL AND WIFE, FRANCES M. RANDALL, CLETUS WAYNE GOODWIN AND WIFE, BOBBY JEAN GOODWIN, CHARLES E. HORNE, AND WIFE DOROTHY C. HORNE, PETITIONERS

No. 17

(Filed 1 December 1981)

**Municipal Corporations § 2.1— annexation—compliance with statutory requirements**

> In an annexation action in which petitioners alleged the city overestimated the total acreage composed of lots and tracts of five acres or less, any alleged error could not have prejudiced petitioners as the city complied with the requirements of G.S. 160A-48(c). The city's estimate of the total area to be annexed and of the subdivided acreage were within the limits prescribed by G.S. 160A-48(c)(2), and under G.S. 160A-54, the trial court was required under the facts to accept the city's estimates as any errors in the total acreage estimates were less than 5%.

APPEAL by petitioners from the 10 September 1980 judgment of *Thornburg, J.,* affirming the annexation of an area known as "Coulwood" by the City of Charlotte pursuant to the provisions of G.S. 160A-45 *et seq.*

On 14 January 1980 the Charlotte City Council adopted a resolution expressing its intent to annex the Coulwood area. A Plan for serving the area was approved by the Council on 25 February 1980. A public hearing was held on 12 March 1980, and on 24 March the Council adopted an ordinance annexing Coulwood into the City as of 30 June 1980.

Petition for review of the City's action under G.S. 160A-50 was filed on 22 April 1980. The petition alleged that the population density of the area was less than the two persons per acre required by G.S. 160A-48(c)(1).

A hearing was held on 16 June 1980, at which time petitioners apparently subpoenaed and were prepared to call a witness from each of the eight hundred households in the area to testify to the number of occupants in that witness's household in order to determine the total population of the Coulwood area. Petitioners moved for a reference on the question of population. The court granted the motion, appointing a referee "to determine the total resident population of the Coulwood Area as of March

24, 1980, for the purpose of assisting the court in determining whether the Coulwood Area qualifies for annexation," and the petitioners' population witnesses were excused by the court with petitioners' consent. The referee submitted his report on 6 August 1980. On the 12th of August petitioners moved to amend their petition to allege that less than 60 percent of the area was in lots of five acres or less in size. G.S. 160A-48(c)(2). On 14 August the City filed objection to the Referee's report. Petitioners moved to remand the report for a more complete finding. The court granted neither motion. The Referee's report indicated that based on preliminary 1980 census data the population of Coulwood could be estimated at 2364, and that based upon his own sample survey the population of the area could be estimated at 2424. The report made no specific conclusions on the issue of Coulwood's population but suggested the population might vary between 2303 and 2545.

The court proceeded to hear evidence and rendered judgment on 10 September 1980 finding that the Coulwood area satisfied both the requirement of G.S. 160A-48(c)(1) that the annexed area contain two persons per acre, and the requirement of G.S. 160A-48(c)(2) that at least 60 percent of the acreage of the annexed area consist of lots of five acres or less. The court affirmed the annexation but stayed the effective date pending this appeal.

*Jeffrey L. Bishop and Hugh G. Casey, Jr., for petitioner appellants.*

*Henry W. Underhill, Jr., and H. Michael Boyd for respondent appellee.*

BRANCH, Chief Justice.

Petitioners argue first that the annexation plan of 25 February 1980 lacks sufficient detail and specificity to comply with the requirements of G.S. 160A-47, which establishes the essential requisites of such a plan. The City argues that the only allegation in the petition which even refers to G.S. 160A-47 is paragraph 4(a) which states:

> The report prepared at the direction of the Charlotte City Council setting forth plans for furnishing of police protection, fire protection, garbage collection and street maintenance

services in the proposed annexed area is in error and in violation of G.S. 160-A-47(3)(a) [sic] in that such services will not be provided as described, cannot be provided as described and will be inferior to the services now being rendered, all to the material injury of the petitioners.

The City argues that this allegation failed to raise properly for review the issue of whether the report lacked specificity and detail, an argument which petitioners raise for the first time before this Court.

Although we tend to agree with the City's position, we elect not to reach this question since the question of the degree of specificity and detail required in a plan under G.S. 160A-47(3) has been resolved. *In re Annexation Ordinance 300-X*, 304 N.C. 549, 284 S.E. 2d 470 (1981) (decided this date). We decided adversely to petitioners' contentions in that case on the basis of a plan which was so factually similar to the plan in instant case as to be almost identical. Based upon the reasoning and authorities set forth in that case, we hold that here the City's plans were sufficiently detailed and specific to meet the requirements of G.S. 160A-47(3).

The remainder of petitioners' arguments relate to the City's alleged lack of compliance with the requirements of G.S. 160A-48(c). The statute requires in pertinent part:

(c) Part or all of the area to be annexed must be developed for urban purposes. An area developed for urban purposes is defined as any area which meets any one of the following standards:

(1) Has a total resident population equal to at least two persons for each acre of land included within its boundaries; or

(2) Has a total resident population equal to at least one person for each acre of land included within its boundaries, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage consists of lots and tracts five acres or less in size and such that at least sixty percent (60%) of the total number of lots and tracts are one acre or less in size . . . .

We note at the outset that the statute's requirement that the area to be annexed "must be developed for urban purposes" is satisfied if *either* the standard of (c)(1) *or* the standard of (c)(2) is met. *Food Town Stores v. City of Salisbury*, 300 N.C. 21, 34, 265 S.E. 2d 123, 131 (1980). It is *not* required that both standards be satisfied. Having so stated we turn first to petitioners' single argument relating to the standard set out in G.S. 160A-48(c)(2).

Petitioners do not question the City's compliance with the population density standard of the above section but rather argue that the trial court erred in concluding that the City was correct in its assertion that at least 60 percent of the total acreage of Coulwood consists of lots and tracts of five acres or less. In their brief petitioners review evidence which they argue tended to show that the City had overestimated the total acreage composed of lots and tracts of five acres or less by 32.877 acres. In light of the entire computation under G.S. 160A-48(c)(2), we fail to see how the alleged error could have prejudiced petitioners.

G.S. 160A-48(c)(2) requires that 60 percent of the total acreage consist of lots and tracts of five acres or less. To perform the computations required by this "subdivision test" two figures are needed: the total acreage and the subdivided acreage.

First, the total acreage must be determined. The City estimated the total area of Coulwood at 1198 acres based on county tax maps and records but requested the deduction from this figure of those portions of Coulwood dedicated as street rights-of-way, since the streets were not subject to subdivision. The court allowed the use of this reduced figure, 1015.7 acres, as the "total acreage" to be used in the subdivision test of section (c)(2) of the statute.

The City's estimate of the total area of Coulwood was 1198 acres. Petitioners claim that the City failed to include in its estimate a 41.73 acre tract which lies within the annexed area and included 8.119 acres which actually lie outside the area, thus they claim a total error in the City's estimate of 33.611 acres. G.S. 160A-54 provides in part:

In determining whether the standards set forth in G.S. 160A-48 have been met on appeal to the superior court under

G.S. 160A-50, the reviewing court shall accept the estimates of the municipality:

\* \* \*

(2) As to total area if the estimate is based on an actual survey, or on county tax maps or records, or on aerial photographs, or on some other reasonably reliable map used for official purposes by a governmental agency, unless the petitioners on appeal demonstrate that such estimates are in error in the amount of five percent (5%) or more.

Thus the court below was *required* under the facts of this case to accept the City's estimate of the total area of Coulwood since 41.73 is less than 5 percent of 1198, the City having used county tax maps and records in arriving at this estimate as required by the above-quoted statute.

The City did not use 1198 in its computation under G.S. 160A-48(c)(2) but reduced this figure by the 182.3 acres which were subject to street rights-of-way rendering a total acreage capable of subdivision of 1015.7. While the trial court's conclusion that 1015.7 was the proper figure to be used in the subdivision test of G.S. 160A-48(c)(2) was excepted to at trial, it was not made the subject of an assignment of error, nor was the propriety of this figure addressed in the briefs. Under our Rules this exception is deemed abandoned, *see* N.C. Rules App. P., Rule 10(b). Whether it was proper for the trial court to reduce the area of Coulwood to 1015.7 is thus not before this Court for review, and 1015.7 is the figure upon which we must base our review of the computation in this case of the subdivision test of G.S. 160A-48(c)(2).

The second determination is that of the subdivided acreage; that consisting of lots and tracts of five acres or less. Based on county tax maps and records, the City submitted an estimate of 765.6 acres in tracts of five acres or less. Petitioners claim this figure must be reduced by 32.877 acres, the amount of the alleged error. Assuming *arguendo* that the City's estimate should be reduced, rendering the new figure of 732.723 subdivided acres, the outcome of the computation remains unaltered.

The figure 732.723 is 72.14 percent of 1015.7. The statute requires only that the acreage in lots of five or less acres be at

least 60 percent; moreover, G.S. 160A-54 requires acceptance of the City's estimate:

> (3) As to degree of land subdivision, if the estimates are based on an actual survey, or on county tax maps or records, or on aerial photographs, or on some other reasonably reliable source, unless the petitioners on appeal show that such estimates are in error in the amount of five percent (5%) or more.

The City, using their 765.6 figure, estimated that 75.4 percent of the Coulwood area was subdivided into lots of five acres or less. Petitioners' evidence, even if fully believed, would thus establish an error of no more than 3.26 percent, which under G.S. 160A-54(3) would not be sufficient to allow the trial court to disregard the City's estimate. We note further that even if the trial court had erred in reducing the total area of Coulwood by the area devoted to street rights-of-way, an issue not before this Court and one which we do not herein decide, the area composed of lots of five or less acres would comprise 61.162 percent of Coulwood's total area (732.723 ÷ 1198 = .61162); a figure still in excess of the 60 percent required by G.S. 160A-48(c)(2) and one which would render harmless any error in accepting the City's estimate.

We find this assignment of error to be without merit.

Petitioners present two arguments alleging error in the computation and procedure of the population test of G.S. 160A-48(c)(1). They are: first, that the trial court erred in concluding that the area in question qualifies for annexation under G.S. 160A-48(c)(1); and second, that the trial court erred in refusing to remand the proceeding to the referee for a more complete report on the population of the annexation area. We reach neither of these questions. The area qualifies under G.S. 160A-48(c)(2). The statute requires only that the area to be annexed meet *one* of the standards listed.

The judgment of the trial judge affirming Annexation Ordinance 301-X is

Affirmed.