THE LITTLE RED SCHOOL HOUSE, LIMITED, Z. H. HOWERTON, JR.,
TRUSTEE, PATRICIA A. BALLINGER, EMILY RUTH BALLINGER, AND
MAX D. BALLINGER v. THE CITY OF GREENSBORO, A MUNICIPALITY, AND
THE GREENSBORO CITY COUNCIL, THE GOVERNING BOARD OF THE CITY OF
GREENSBORO

No. 8418SC80

(Filed 20 November 1984)

1. **Municipal Corporations § 2.6— annexation—plans for water and sewer service
—adequate**

   The report issued by the City in connection with its annexation of peti-
   tioners' property substantially complied with the requirements of G.S. 160A-47
   concerning the provision of water and sewer services in the annexed areas.

2. **Municipal Corporations § 2.2— annexation—use of area—description of sub-
areas**

   Although the area sought to be annexed was broken into three subareas
   for determining under G.S. 160-48(c) and (d) whether the area was urban or
   connected urban areas, there is no authority requiring a precise description of
   the subareas, the Services Report prepared by the City contained a map clear-
   ly showing the outlines of the subareas, and petitioners have shown no
   material prejudice to their substantive rights resulting from their claimed ig-
   norance of the boundaries of the subareas.

3. **Municipal Corporations § 2.2— annexation—population density—evidence suffi-
cient—use of preliminary census figures approved**

   The court's findings that the City had complied with statutory require-
   ments in determining population and degree of land subdivision were support-
   ed by plenary evidence, and are therefore conclusive. The use of preliminary
   census figures was specifically sanctioned in *In re Durham Annexation Or-
   dinance*, 66 N.C. App. 472. G.S. 160A-48(c), G.S. 160A-54.

**4. Municipal Corporations § 2— annexation—conduct of hearing—proper**

The City conducted a proper hearing under G.S. 160A-49, despite petitioners' complaints that the mayor and council members were insufficiently attentive to the speakers, sometimes leaving their chairs and talking with each other, where the record reveals that the hearing was attended by more than 1,000 persons, that the hearing lasted five and one-half hours, ending at 1:00 a.m., and that numerous persons, including petitioners, were permitted to speak.

**5. Municipal Corporations § 2— annexation procedure—proper**

The City did not act arbitrarily, capriciously, or in an unreasonable manner in annexing the petitioners' property, and complied with the statutory requirements set out in G.S. 160A-47, 48, and 49.

**6. Municipal Corporations § 2.3— annexation—compliance with statutory requirements**

There was much competent evidence to support the finding that the City substantially complied with the requirements of G.S. 160A-48(e) respecting the boundaries of the annexation area as related to the petitioners' property.

**7. Municipal Corporations § 2— annexation—no violation of equal protection or local act prohibition**

The statutes governing annexation do not violate the petitioners' constitutional right to equal protection and do not violate the local act prohibition of the North Carolina Constitution.

**8. Municipal Corporations § 2— annexation statute not a revenue bill**

The annexation statute, Part 3 of Article 4A of Chapter 160A, as enacted and as applied by the City of Greensboro, was not a revenue bill required to be read three times in each house of the General Assembly.

**9. Municipal Corporations § 2— annexation statutes not retroactive taxation statutes**

The annexation statutes under which the City acted were not taxation statutes, and therefore were not retroactive taxation statutes. Art. I, § 16, North Carolina Constitution.

APPEAL by petitioners from *Seay, Judge.* Judgment entered 23 March 1983 in Superior Court, GUILFORD County. Heard in the Court of Appeals 23 October 1984.

This is an appeal from a final judgment affirming an ordinance of annexation enacted by the Greensboro City Council on 16 November 1981. The record reveals the following:

On 1 October 1981 the City Council of Greensboro adopted a resolution announcing its intent to consider the annexation of three areas lying just outside the Greensboro city limits. On 19

October the City Council received and approved an annexation report containing plans for extension of services to the areas being considered for annexation, pursuant to N.C. Gen. Stat. Sec. 160A-47. On 2 and 4 November 1981, following proper and timely notice, public hearings were held on the proposed annexation. On 16 November the ordinances of annexation were enacted by the City Council. On 17 December 1981 two groups of persons owning property in the areas annexed filed petitions seeking judicial review of the annexation ordinances in Superior Court, pursuant to N.C. Gen. Stat. Sec. 160A-50. The two appeals were heard and tried together in superior court. On 23 March 1983 the superior court entered judgment affirming the ordinances appealed from. Both groups of property owners appealed Judge Seay's decision to this Court. On 4 September 1984 this Court affirmed Judge Seay's decision, insofar as it related to one group of property owners in *Campbell v. City of Greensboro,* 70 N.C. App. 252, 319 S.E. 2d 323 (1984). The instant appeal is that taken by the second group of petitioners, all of whom own property in "Area M" — one of the three areas annexed. The questions presented on this appeal thus relate solely to that part of Judge Seay's order pertaining to Ordinance 81-106, authorizing annexation of that property hereinafter referred to as Area M.

*Max D. Ballinger for petitioners, appellants.*

*Dale Shepherd and Linda A. Miles for respondent, appellee.*

HEDRICK, Judge.

[1] By Assignments of Error Nos. 2, 7, 11, and 23, petitioners contend that the trial court erred in determining that the City of Greensboro complied with N.C. Gen. Stat. Sec. 160A-47 in connection with the provision of water and sewer services to the annexed area. G.S. 160A-47 in pertinent part provides:

A municipality exercising authority under this Part shall make plans for the extension of services to the area proposed to be annexed and shall . . . prepare a report setting forth such plans to provide services to such area. The report shall include:

(1) A map . . . of the municipality and adjacent territory to show the following information:

. . .

b. The present major trunk water mains and sewer interceptors and outfalls, and the proposed extensions of such mains and outfalls. . . .

. . .

(3) A statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation. Specifically, such plans shall:

. . .

b. Provide for extension of major trunk water mains and sewer outfall lines into the area to be annexed. . . .

c. If extension of major trunk water mains and sewer outfall lines into the area to be annexed is necessary, set forth a proposed timetable for construction of such mains and outfalls as soon as possible following the effective date of annexation.

Our appellate courts have discussed G.S. 160A-47 on several occasions. In *In re Annexation Ordinance*, 304 N.C. 549, 284 S.E. 2d 470 (1981), our Supreme Court said:

The central purpose behind our annexation procedure is to assure that, in return for the added financial burden of municipal taxation, the residents receive the benefits of all the major services available to municipal residents. [Citations omitted.] The minimum requirements of the statute are that the City provide information which is necessary to allow the public and the courts to determine whether the municipality has committed itself to provide a nondiscriminatory level of service and to allow a reviewing court to determine after the fact whether the municipality has timely provided such services. . . . We believe that the report need contain only the following: (1) information on the level of services then available in the City, (2) a commitment by the City to provide this same level of services in the annexed area within the statutory period, and (3) the method by which the City will finance the extension of these services.

*Id.* at 554-55, 284 S.E. 2d at 474.

In the instant case, the Report prepared by the City pursuant to G.S. 160A-47 contains the following plans concerning water and sewer services:

I. *City Water Service* — Water service will be provided in accordance with City ordinances and policies applicable at the time extensions are made. Preparation of plans and specifications will begin prior to the effective date of annexation. Contracts will be let and construction begun within one year after the effective date of annexation on all major water lines to serve the areas involved, as required by State law. (Exhibits L, M and N).

Water service to all public streets in the areas to be annexed will be extended on the same basis as is now used in the existing city. Service is extended upon receipt of a petition from more than 50 percent of the number of property owners on a street, who collectively own more than 50 percent of the property frontage on the street. The City Council may also extend services, without such a petition, on the basis of public necessity. In either case the property owner is assessed at a specified maximum rate with the rate not to exceed the cost of a six inch line.

The cost of installation for major lines will be financed by appropriation from the water construction account in the Water and Sewer Operating Fund. Assessments levied for these lines will be used to install additional lines with the difference between cost of installation of lines and cost assessed being made up from current revenues from water and sewer charges. The estimated cost for extending major water lines is $715,000.

J. *City Sewer Service* — City sewer service will be provided in accordance with City ordinances and policies applicable at the time extensions are made. Preparation of plans and specifications for major sanitary sewer outfalls, collectors and any lift stations will begin prior to the effective date of annexation. Contracts will be let and construction begun on these facilities within one year after the effective date of annexation as required by State law. (Exhibits O, P and Q).

Exhibits O, P and Q identify major sanitary sewer out-falls, collectors and lift stations that are existing and/or necessary to serve the annexation areas. The Horsepen Creek project, which is indicated on Exhibits P and Q, is a Federal, State and County approved and funded project. Bids are scheduled to be received on November 5, 1981, with construction anticipated to begin by Spring of 1982 and completion by Fall of 1983.

Sewer services to all public streets in the areas will be extended upon the same basis as is now used in the existing city. Service is extended upon receipt of a petition from more than 50 percent of the number of property owners, who collectively own more than 50 percent of the property frontage on a street. The City Council may also extend service without such a petition on the basis of public necessity. In either case the property owner is assessed at a specified maximum rate with the rate not to exceed the cost of an eight inch line.

The cost of installation for sewer outfalls, collectors and lift stations, will be financed by appropriation from the sewer construction fund in the Water and Sewer Operating Fund. Assessments levied for these lines will be used to install additional lines with the difference between cost of installation of the lines and cost assessed being made up from current revenues from water and sewer charges. The estimated cost of extending major sewer lines is $235,000.

Also included in the Report are maps showing existing and proposed water mains and sewer lines in Area M. We think it clear that the Report prepared by the City substantially complies with the statutory requirements. Petitioners' attempts to distinguish plans to provide water from plans to provide water trunk lines, and their contentions regarding probable accelerated growth in Area M are of no avail, and we hold they have failed to carry their burden of demonstrating the City's noncompliance with G.S. 160A-47.

[2] Petitioners next assign error to the court's "findings of fact and conclusions of law that the character of the area sought to be annexed met the requirements of G.S. 160A-48(c) and G.S. 160A-48(d)." N.C. Gen. Stat. Sec. 160A-48(c) requires that "[p]art or all of the area to be annexed must be developed for urban pur-

poses," and sets out three standards by which compliance with this requirement is to be measured. N.C. Gen. Stat. Sec. 160A-48(d) provides for the inclusion of areas not developed for urban purposes "which constitute necessary land connections between the municipality and areas developed for urban purposes or between two or more areas developed for urban purposes."

In connection with compliance with G.S. 160A-48(c) and (d), Judge Seay made detailed findings of fact to the following effect: Area M is divided into subareas M-1, M-2, and M-3. Subareas M-1 and M-3 meet the requirements of G.S. 160A-48(c)(1), each having a resident population exceeding two persons per acre. Subarea M-2 does not meet the requirements of G.S. 160A-48(c), and thus is not an "area developed for urban purposes," but does fully comply with the requirements of G.S. 160A-48(d), having 74.9% of its external boundary adjacent to the boundaries of the municipality and subareas M-1 and M-3.

Petitioners challenge the court's findings and conclusions on two grounds: first, they contend "[t]he sub-areas M-1, M-2, and M-3 were, and remain, totally undescribed." We reject petitioners' contentions in this regard for three reasons. First, we are aware of no authority, and petitioners cite none, requiring the City to provide a precise description of subareas considered for annexation. Second, Exhibit E contained in the Services Report prepared by the City is a map of Area M clearly showing the outlines of the subareas. Finally, we note that petitioners have shown no material prejudice to their substantive rights resulting from their claimed ignorance of the boundaries of the subareas.

[3] Petitioners next contend that "the population figures used by the City for that nebulous area of M-1 were overstated by 640 persons," resulting in an average resident population of less than two persons per acre, disqualifying subarea M-1 for annexation under G.S. 160A-48(c).

G.S. 160A-54 in pertinent part provides:

In determining population and degree of land subdivision for purposes of meeting the requirements of G.S. 160A-48, the municipality shall use methods calculated to provide reasonably accurate results. In determining whether the standards set forth in G.S. 160A-48 have been met on appeal

to the superior court under G.S. 160A-50, the reviewing court shall accept the estimates of the municipality:

(1) As to population, if the estimate is based on the number of dwelling units in the area multiplied by the average family size in such area, or in the township or townships of which such area is a part, as determined by the last preceding federal decennial census; or if it based on a new enumeration carried out under reasonable rules and regulations by the annexing municipality; provided, that the court shall not accept such estimates if the petitioners demonstrate that such estimates are in error in the amount of ten percent (10%) or more.

Judge Seay made detailed findings of fact and conclusions of law in regard to the methods used by the City to determine the population in the annexed areas, including the following:

14. As part of the method used by the City in determining the population in the annexed areas, the City used the number of dwelling units in those areas multiplied by the persons per dwelling unit, as determined by calculations from the preliminary Census Bureau counts of population in the annexed areas. In doing so the City used figures and information gathered by officials from the United States Census Bureau.

. . .

In making the determination of whether there were at least two persons per acre in the annexed areas, the City used the Census Bureau's information contained in the Preliminary 1980 Census Computer Printout in Guilford County, which contained population data on the enumeration district level, which was the smallest area for which population and housing data was available. This method of determining persons per dwelling unit was used because it was the most accurate method possible to be sure that the population figures were correct.

. . .

The Court finds that the methods used to determine the acreage, population, number of dwelling units, and number of

persons per acre comply with the requirements of the
statute. . . .

. . .

3. That the method used by the City of Greensboro in
determining the usage and population of the annexed areas is
legal and proper and within the standards required by G.S.
160A-48 and G.S. 160A-54.

It is elementary that the trial court's findings of fact are con-
clusive if supported by any competent evidence, even though con-
trary evidence is also presented. *Williams v. Insurance Co.*, 288
N.C. 338, 218 S.E. 2d 368 (1975). In the instant case the City of-
fered plenary evidence tending to show full compliance with the
statutory requirements, and which amply supports the court's
findings of fact. Petitioners' attempts to impeach this evidence
were obviously not found credible by the trial court. We note in
particular, in response to repeated complaints in petitioners' brief
about the City's use of preliminary census figures, that reliance
on preliminary census figures was specifically sanctioned by this
Court in *In re Durham Annexation Ordinance*, 66 N.C. App. 472,
311 S.E. 2d 898 (1984). We find no error in the findings of fact and
conclusions of law challenged by petitioners in these assignments
of error.

[4] Petitioners next contend the annexation ordinance should be
vacated due to the City's failure to comply with the statutory pro-
cedures set out in G.S. 160A-49. Specifically, petitioners contend
that the public hearing, required by G.S. 160A-49 and conducted
by the City on 2 and 4 November, 1981, "was a mere formality,"
and a "ceremonial assemblage misnamed a 'hearing.' " Petitioners
complain that the mayor and Council members were insufficiently
attentive to the speakers at the 4 November hearing, sometimes
leaving their chairs and talking with each other. The record
reveals that the 4 November hearing was attended by more than
1,000 persons, that the hearing lasted some five and one half
hours, ending at 1:00 A.M., and that numerous persons, including
petitioners, were permitted to speak. Petitioners' contentions in
connection with this assignment of error approach absurdity.

[5] Petitioners next argue that the City acted "arbitrarily,
capriciously, or in an unreasonable manner in annexing the peti-

tioners' property so as to produce unfair and inequitable results not in keeping with legislative intent." While petitioners make reference to a number of entirely irrelevant facts in the portion of their brief discussing this question, careful scrutiny reveals that the gist of their argument is that the City failed to comply with the statutory requirements set out in G.S. 160A-47, -48, and -49. We have upheld the trial court's determination that there was substantial compliance with the statutory requirements, and thus find these assignments of error without merit.

[6] By Assignments of Error 18 and 23, petitioners argue the court erred in concluding that the City had complied "with the requirements of 160A-48(e) respecting boundaries of the annexation area as relates to these petitioners' property." The issue argued by petitioners was decided in *Campbell v. City of Greensboro*, 70 N.C. App. 252, 319 S.E. 2d 323 (1984), a case involving an appeal by other property owners in the annexed areas from the same judgment as that appealed from by petitioners in the instant case. In *Campbell* this Court held that there is "much competent evidence" to support the findings of fact, which in turn support the conclusion that the City substantially complied with G.S. 160A-48(e). The assignments of error are thus overruled.

[7] By Assignments of Error Nos. 12, 1, 23, and 13, petitioners contend that certain portions of the statues governing annexation are unconstitutional, in that they "violate the petitioners' constitutional right to equal protection of the laws" under the United States and North Carolina Constitutions, and that they "violate the local act prohibition" contained in the North Carolina Constitution. In support of these assignments of error, petitioners purport to "incorporate into their brief and adopt the argument on this question presented in the Campbell petitioners' brief as their argument on this particular question." Assuming *arguendo* that such a practice is permissible under the Rules of Appellate Procedure so as to preserve petitioners' right to have this question considered on appeal, we note that this Court rejected identical contentions in *Campbell*, and we are bound by its ruling in this regard. *Id.* at 254, 319 S.E. 2d at 325.

[8] Petitioners next argue that the court erred "in failing to find as fact and determine as a matter of law that the annexation statute, Part 3 of Article 4A of Chapter 160A, as enacted and as

applied by the City of Greensboro was a revenue bill and violative of Article II, Section 23, of the North Carolina Constitution in that it was not passed in accordance with the constitutional provisions for the enactment of revenue bills." In brief, petitioners contend that the annexation statute was subject to the constitutional requirement, applicable to the enactment of revenue bills, that the proposed statute be read three times in each house of the General Assembly, that these statutes were not so read, and that Chapter 160A, Article 4A, Part 3, is void. The same argument was unsuccessfully made to our Supreme Court in 1908 in a case involving an extension of the Fayetteville municipal boundaries. *Lutterloh v. Fayetteville*, 149 N.C. 65, 62 S.E. 758 (1908). The argument has not improved with age. The assignment of error is without merit.

[9] Petitioners next contend that the court erred "in determining as a matter of law that the annexation statutes under which the City of Greensboro purported to annex were not in the nature of retrospective taxation statutes prohibited by Article 1, Section 16, of the North Carolina Constitution." Having ruled that the annexation statutes are not taxation statutes, it follows that they are not "retrospective taxation statutes." *See Matthews v. Blowing Rock*, 207 N.C. 450, 177 S.E. 429 (1934); *Lutterloh v. Fayetteville*, 149 N.C. 65, 62 S.E. 758 (1908). The assignment of error is without merit.

Petitioners' remaining assignments of error are based on the premise that the court erred in one of the numerous rulings discussed above. Having found no error in these rulings, we find it unnecessary to discuss these assignments of error. The judgment appealed from is in all respects affirmed.

Affirmed.

Judges WEBB and HILL concur.