BALI COMPANY, a DIVISION OF SARA LEE CORPORATION; COMMERCIAL INTERTECH CORPORATION; FIRESTONE FIBERS AND TEXTILES COMPANY, a DIVISION OF BRIDGESTONE/ FIRESTONE, INC.; H & W SYSTEMS CORPORATION D/B/A TURBO D/B/A TURBO CONVEYOR; AND METAL FABRICATING LEASING, INC., PETITIONERS v. CITY OF KINGS MOUNTAIN, N.C., RESPONDENT

BALI COMPANY, a DIVISION OF SARA LEE CORPORATION, PETITIONER v. CITY OF KINGS MOUNTAIN, N.C., RESPONDENT

No. COA98-388

(Filed 20 July 1999)

**1. Cities and Towns— annexation—requirements—burden of proof**

Reports and annexation ordinances reflecting adherence to the applicable requirements of N.C.G.S. § 160A-45 et seq. establish prima facie that an annexing authority has substantially com-

plied with the statute and the burden lies with an annexation challenger to demonstrate the contrary.

**2. Cities and Towns— annexation—requirements—residential purposes—mobile homes**

An area being annexed qualified as being developed for urban purposes under N.C.G.S. § 160A-53(2) where petitioners maintained that some of the lots relied upon by the City were not used for residential purposes as required by the statute because they were occupied by mobile homes which were not "constructed" on the lots. The testimony of the City's consultant provided support for the court's findings that the mobile homes required necessary construction and improvements on-site after delivery.

**3. Cities and Towns— annexation—requirements—residential purposes—condemned home**

The trial court did not err when affirming an annexation in its finding regarding residential purposes where petitioners contended that the City included a condemned home as a "habitable" residence. The trial court properly noted in its judgment that the structure had been destroyed by fire, but provided that deletion of that structure from the calculation of the "urban purposes" percentage under N.C.G.S. § 160A-48(c)(3) did not affect the City's compliance with the section.

**4. Cities and Towns— annexation—requirements—use of topographic features**

There was no error in an annexation challenge where petitioners contended that the City neglected to utilize topographic features in fixing interior boundaries contrary to N.C.G.S. § 160A-48(e). The statute speaks of municipal boundaries rather than interior boundaries and the record shows that the properties taken as a whole form exterior municipal boundaries properly denominated by topographic features wherever practical.

**5. Cities and Towns— annexation—requirements—police and fire protection**

An annexation plan satisfied the requirements of N.C.G.S. § 160A-47(3)(a) where petitioners contended that the plan was defective in failing to provide additional police and fire services, but the court found that petitioners would receive services on a basis at least substantially equal to the current inhabitants and the record sustains the court's findings. The precise details of the extension of police and fire protection are not required.

**BALI CO. v. CITY OF KINGS MOUNTAIN**

[134 N.C. App. 277 (1999)]

Appeal by petitioners from judgments filed 4 December 1997 by Judge J. Marlene Hyatt in Cleveland County Superior Court. Heard in the Court of Appeals 19 November 1998.

*Kilpatrick Stockton, L.L.P., by Jackson N. Steele, Charles H. Rabon, Jr. and Spencer H. Kelly, for petitioner-appellants.*

*Corry, Cerwin & Luptak, by Clayward C. Corry, Jr. and Todd R. Cerwin, for respondent-appellee.*

JOHN, Judge.

Petitioners appeal the trial court's essentially identical judgments "denying the[ir] petition seeking review of annexation and affirming the Annexation Ordinance" (the Ordinance) adopted by the Governing Board of respondent City of Kings Mountain (the City). According to petitioners, the trial court erred in that: 1) annexation Area 97-A (Area 97-A) was not "developed for urban purposes" as defined in N.C.G.S. § 160A-48(c) (1994), 2) the City failed to use topographic features in fixing interior boundaries of annexation Area 97-B (Area 97-B), and 3) the City's Annexation Services Plan (the Plan) failed to demonstrate "that municipal services can and will be provided to the annexation area" in the same manner as to the remainder of the City prior to annexation. We affirm the trial court.

Pertinent facts and relevant procedural history include the following: Petitioners Bali Company (Bali), a division of Sara Lee Corporation, Commercial Intertech Corporation (Commercial), Firestone Fibers and Textiles Corporation (Firestone), a division of Bridgestone/Firestone, Inc., H & W Systems Corporation, d/b/a Turbo Conveyor (H & W), and Metal Fabricating Leasing, Inc. (Metal), each own real property in Kings Mountain, North Carolina. On 28 May 1996, the City, a municipal corporation with a population greater than 5,000, adopted the Ordinance providing for annexation of two property areas designated as Area 97-A, comprising two hundred nineteen acres, and Area 97-B, comprising five hundred fifty-five acres. Under the Plan, each Area was divided into portions categorized as an "urban area" under G.S. § 160A-48(c)(3) and a "non-urban area" under N.C.G.S. § 160A-48(d)(1)&(2) (1994). In adopting the Ordinance, the City considered and relied upon a report (the Report), analyzing in detail the effects of annexation prepared by the City's consultant, F. Richard Flowe (Flowe).

On 27 June 1996, Bali, a property owner in Area 97-A, filed a "Petition Seeking Review of Annexation" referencing Area 97-A. On

that same date, Bali, Commercial, Firestone, H & W and Metal, all property owners in Area 97-B, filed a similar petition for purposes of jointly appealing annexation of Area 97-B. The two petitions were consolidated for trial and heard at the 27 October 1997 Civil Session of Cleveland County Superior Court, whereupon the trial court entered judgments affirming the Ordinance. Petitioners timely appealed.

[1] Initially, we note that reports and annexation ordinances reflecting adherence to the applicable requirements of N.C.G.S. § 160A-45 *et seq.* (1994), establish *prima facie* that an annexing authority, the City herein, has substantially complied with the statute, and that the burden lies with an annexation challenger to demonstrate the contrary. *In re Annexation Ordinance*, 255 N.C. 633, 642, 122 S.E.2d 690, 697 (1961). Further, the trial court's findings of fact are binding on appeal if supported by evidence, notwithstanding evidence to the contrary, but "[c]onclusions of law drawn . . . from [those] findings of fact are reviewable *de novo.*" *Food Town Stores v. City of Salisbury*, 300 N.C. 21, 25-26, 265 S.E.2d 123, 126-27 (1980). We hold the trial court's findings *sub judice* are, in each instance challenged by petitioners, supported by competent evidence and that the court did not err in concluding petitioners had failed "to overcome the presumption that the [City] . . . complied with the statutory procedures or that the statutory requirements were not met."

[2] In their first argument, petitioners contend Area 97-A did not qualify as being "developed for urban purposes" under G.S. § 160A-48(c)(3). Petitioners maintain that eleven lots relied upon by the City were not "used for residential purposes" as required by N.C.G.S. § 160A-53(2) (1994).

G.S. § 160A-48(c)(3) requires part of an annexed area to have been developed for "urban purposes," and that

(3) . . . at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes. . . .

In addition:

(2) "Used for residential purposes" shall mean any lot or tract five acres or less in size on which is constructed a habitable dwelling unit.

G.S. § 160A-53(2).

**BALI CO. v. CITY OF KINGS MOUNTAIN**

[134 N.C. App. 277 (1999)]

Petitioners insist the mobile homes at issue fail the statutory test in that they were not "constructed" on lots, but rather were built in factories. We believe the City has the better of this argument and, upon review of the record and the Ordinance, conclude that it established *prima facie* substantial compliance with applicable statutory provisions, including G.S. § 160A-48(c)(3).

The term "constructed" is not defined under G.S. § 160A-53, but Black's Law Dictionary sets forth the following definition:

[t]o build; erect; put together; make ready for use. To adjust and join materials, or parts of, so as to form a permanent whole.

Black's Law Dictionary 312 (6th ed. 1990).

In its findings of fact, the trial court provided that the manufactured homes *sub judice*, upon delivery to the lots in question,

were not . . . habitable, and that . . . construction [including utility connections and a foundation, would be] necessary . . . to make them habitable.

The court further noted the mobile homes not only required necessary construction on the lots for habitability purposes, but that many also underwent additional construction to add porches, additional rooms and other permanent improvements.

Flowe was the City's sole witness before the trial court. He testified there was no analytical distinction between structures built completely on-site and those built partially off-site, and that determination of whether a dwelling is "constructed" on a lot under G.S. § 160A-53(2) is based upon whether the structure is habitable at delivery. According to Flowe, the mobile homes herein were not habitable upon delivery, but required at a minimum construction of: footings and support systems for a foundation effect, anchoring systems, a closure system to shut off movement of air beneath the unit, ingress or egress to the unit, and connections to a water supply, waste disposal system and electrical supply.

Flowe's testimony provided support in the record for the trial court's findings that the mobile homes required necessary construction and improvements on-site after delivery, and that "G.S. § 160A-53(2) does not require one hundred (100%) percent construction of a habitable dwelling unit to occur on-site."

[3] In this first argument, petitioners also maintain the City improperly included a condemned home as a "habitable" residence. To comply with the residential use provision within G.S. § 160A-48(c)(3), a structure must be habitable upon the date an annexation report is submitted. *Food Town Stores*, 300 N.C. at 36-37, 265 S.E.2d at 133.

Flowe testified that one house incorporated into the "urban purposes" calculation was indeed condemned on the date he submitted the Report. The trial court properly noted in its judgment that the structure had been destroyed by fire, but provided that deletion of that single structure from calculation of the "urban purposes" percentage under G.S. § 160A-48(c)(3) did not affect the City's compliance with the section. The trial court's finding is supported by the record and its mathematical computation was accurate.

In short, petitioners failed to overcome the presumption that the City substantially complied with G.S. § 160A-48(c)(3), *see In re Annexation Ordinance*, 255 N.C. at 642, 122 S.E.2d at 697, and the trial court did not err in rejecting petitioners' first challenge to the Ordinance.

[4] Petitioners' second argument is that the City neglected to utilize topographic features in fixing interior boundaries of Area 97-B contrary to the policy underlying N.C.G.S. § 160A-48(e) (1994). The trial court found as fact that

> the external boundaries of the newly annexed area do, wherever practical, use natural topographic features . . . ; and wherever such would be impractical, the external boundary lines do follow property lines and man-made physical barriers.

The foregoing findings, which refute petitioners' second argument, were not assigned as error in the record on appeal and thus will not be reviewed by this Court. *See Bustle v. Rice*, 116 N.C. App. 658, 659, 449 S.E.2d 10, 11 (1994) ("appellate review is limited to the issues presented by assignments of error set out in the record on appeal"). Petitioners' second argument is therefore unavailing. Moreover, the record reveals petitioners' contention is in any event unfounded.

G.S. § 160A-48(e) provides:

> In fixing new municipal boundaries, a municipal governing board shall, wherever practical, use natural topographic features such as ridge lines and streams and creeks as boundaries, and may use streets as boundaries.

Petitioners assert the

City arbitrarily divided Area 97-B into three areas, identified as 97-B.c.1—the "urban area"; and 97-B.d.1 and 97-B.d.2—the two "non-urban areas." None of these areas would qualify for annexation alone, but . . . the City manipulated the boundaries of each, and then applied different sections of the Annexation Statute [G.S. § 160A-48(c)(3) and G.S. § 160A-48(d)(1)or(2)] to qualify each area

for annexation under G.S. § 160A-48(e).

It is well established

that in order to establish non-compliance with N.C. Gen. Stat. § 160A-36(d) [now G.S. § 160A-48(e)], petitioners must show two things: (1) that the boundary of the annexed area does not follow natural topographic features, and (2) that it would have been practical for the boundary to follow such features.

*Weeks v. Town of Coats*, 121 N.C. App. 471, 474, 466 S.E.2d 83, 85 (1996) (citations omitted).

The purpose of the non-urban/urban designation subsection is to

permit municipal governing boards to extend corporate limits to include all nearby areas developed for urban purposes and where necessary to include areas which at the time of annexation are not yet developed for urban purposes but which constitute necessary land connections between the municipality and areas developed for urban purposes or between two or more areas developed for urban purposes.

G.S. § 160A-48(d).

Petitioners' argument in the instant case is not that exterior boundaries failed to follow topographic features, but rather that the City did not use such features to establish interior urban and non-urban boundaries. This contention is inapposite. The statute, in addressing the division between urban and non-urban areas does not speak to interior boundaries, but rather speaks of "fixing municipal boundaries," G.S. § 160A-48(e), the exterior boundaries of the municipality as annexed.

Moreover, careful examination of the record indicates the non-urban divisions within Area 97-B connect the municipality to urban

areas, and the properties taken as a whole form an exterior municipal boundary properly denominated by topographic features wherever practical. *See In re Annexation Ordinance*, 255 N.C. at 643, 122 S.E.2d at 698 ("[w]here an area to be annexed, when considered as a whole, meets the [statutory] requirements . . . a portion of the area may not, as a matter of right, be excluded from annexation merely because it, taken alone, does not meet the[] requirements").

**[5]** Lastly, petitioners contend the Plan violated N.C.G.S. § 160A-47(3)(a) (1994) in failing "to demonstrate that municipal services can and will be provided" to the City's twenty-two percent (22%) increased geographic area in the same manner as provided prior to annexation. According to petitioners, the Plan was defective by virtue of failing to provide for additional police officers, firefighters, police or fire equipment, or assurances that the City would contract volunteer fire departments. We do not agree.

G.S. 160A-47(3)(a) requires that police and fire protection to an annexed area be on "substantially the same basis and in the same manner as such services [we]re provided within the rest of the municipality prior to annexation." *Id.* At a minimum the section mandates that

the City provide information which is necessary to allow the public and the courts to determine whether the municipality has committed itself to provide a nondiscriminatory level of service and to allow a reviewing court to determine after the fact whether the municipality has timely provided such services.

*In re Annexation Ordinance*, 304 N.C. 549, 554, 284 S.E.2d 470, 474 (1981). The underlying legislative purpose is to assure that annexed residents receive all major city services in return for the additional burden of city taxes. *Id.*

The requisite information must include (1) the current level of services within the City, (2) a commitment to provide substantially the same level of services in the annexed areas, and (3) the methodology for financing the extension of services. *Id.* at 555, 284 S.E.2d at 474. Precise details of the extension of police and fire protection, *Parkwood Ass'n., Inc. v. City of Durham*, 124 N.C. App. 603, 607-08, 478 S.E.2d 204, 207 (1996), *disc. review denied*, 345 N.C. 345, 483 S.E.2d 175 (1997), or the exact number of additional personnel to be hired or equipment to be purchased, *In re Annexation Ordinance*,

300 N.C. 337, 343, 266 S.E.2d 661, 664 (1980) (report meets minimum statutory plan requirements even absent number of additional personnel to be hired), are not required. We conclude the Plan at issue satisfied the foregoing requirements.

With respect to police protection services, the Plan recited that the City would redefine patrol zones in consequence of the twenty-two percent (22%) increase in geographic area and re-assign existing police personnel to those new zones. Neither additional officers nor equipment were deemed necessary because the 1.4 per cent increase in population did not affect the City's current officer to citizen ratio. Twenty-four hour patrol protection provided within the existing City limits was likewise to be afforded to the areas proposed for annexation, any additional costs being paid from the City's General Fund.

Further, fire protection under the Plan was to be maintained in the annexed areas initially through contracts with affected volunteer fire districts, and, in the event such contracts could not be obtained, service was to be provided by the City Fire Department. Moreover, capital improvements for new water lines were set out in the Plan, which also provided that funding for such improvements was to take effect within two years of the effective date of the Ordinance.

The trial court found that petitioners would receive services on a basis "at least substantially equal to the current inhabitants of the City . . . prior to . . . annexation," and that an increase in *ad valorem* taxes was an ordinary consequence of annexation. The record sustains the court's findings, and the court therefore properly concluded petitioners had not overcome the presumption that the Plan complied with G.S. § 160A-47(3)(a). *See In re Annexation Ordinance*, 255 N.C. at 642, 122 S.E.2d at 697-98.

Based on the foregoing, the judgment of the trial court is affirmed.

Affirmed.

Judges WALKER and McGEE concur.